UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                                    )
                                          )        Case No. 22-14267-JGR
303 INVESTMENTS, INC.                     )
EIN: 27-2141753                           )        Chapter 11
                                          )
        Debtor.                           )

**SUB-CHAPTER V PLAN OF REORGANIZATION DATED JANUARY 30, 2023**

303 Investments, Inc. (the "Debtor" or "303"), the Debtor and Debtor-in-Possession herein, by and through its undersigned counsel, hereby proposes, pursuant to Sub-Chapter V of Chapter 11, Title 11 of the United States Code, the following Plan of Reorganization (the "Plan").

## INTRODUCTION

This Plan and the disclosures contained herein are being provided to all creditors and Interest holders of the Debtor.  This Plan is subject to confirmation pursuant to 11 U.S.C. Section 1191 by the United States Bankruptcy Court for the District of Colorado.  Issues related to the merits of the Plan and its confirmation will be the subject of a confirmation hearing pursuant to Order of the Court which will be served upon you.

**The disclosures contained herein have not been approved by the Securities and Exchange Commission.  The Securities and Exchange Commission has not reviewed the accuracy of adequacy of this document.**

The Plan is the governing document or contract with creditors once it is confirmed by the Court.

**WARNING: IF YOU ARE A CREDITOR YOUR RIGHTS MAY BE IMPAIRED BY THE PLAN.**

## CHAPTER 11 AND PLAN CONFIRMATION

Chapter 11 of the Code is designed to allow for the rehabilitation and reorganization of financially troubled entities or individuals.  Chapter 11 allows the Debtor to retain its assets during administration of its Chapter 11 case as Debtor-in-Possession and following confirmation of a Plan as a reorganized Debtor or as provided in the Plan.  Once the Plan is confirmed by the Court, the Plan is the permanent restructuring of the Debtor's financial obligations.

1

The Plan divides creditors into Classes of similarly situated creditors. All creditors of the same Class are treated in a similar fashion. All ownership Interests in the Debtor are also classified and treated alike. Each Class of creditors or Interest holders is either impaired or unimpaired under the Plan. A Class is unimpaired if the Plan leaves unaltered the legal, equitable and contractual rights to which each creditor in the Class is entitled. Alternatively, a claimant is unimpaired if the Plan provides for the cure of a default and reinstatement of the maturity date of the Claim as it existed prior to the default.

The Bankruptcy Court set a bar date establishing January 10, 2023, as the last date for filing Proofs of Claim. The Plan provides that Claims and Interests of all Classes shall be allowed only if evidenced by a timely filed Proof of Claim or Interest or which otherwise appear in the Schedules filed by the Debtor and are not scheduled as disputed, contingent, or unliquidated unless subsequently allowed by the Court. Creditors may check as to whether their Claims have been scheduled as disputed, contingent, or unliquidated by reviewing the Schedules filed by the Debtor with the Court. Alternatively, creditors may contact counsel for the Debtor directly to determine how they have been scheduled.

Bankruptcy Code § 1191 provides that confirmation of the Plan shall occur if the Plan satisfies all provision of 1129(a) except subparagraph 15 and 1191(c).

## BACKGROUND AND EVENTS LEADING TO CHAPTER 11 FILING

The Debtor has been in business for approximately fifteen years. The Debtor purchases raw land and has homes built on it for sale. The Debtor also purchases land with residential improvements on the land and fixes and flips the properties. Based upon its success over the years, the Debtor bought a large number of lots to be developed through the construction of new homes. Generally, a related entity, WilliamMrk, LLC, was retained as the general contractor to handle the construction projects. The Debtor's bankruptcy case was filed because creditor MS Man Debt, LLC filed a lis pendens on all of its real property holdings, bringing property development and sales and the Debtor's cash flow to a halt.

## DESCRIPTION OF ASSETS

The values for the Debtor's primary assets are as follows:

| Asset | Market Value |
|---|---|
| 5424 Freddy's Trial (no basement) | $1,250,000 |

2

| | |
|---|---|
| 5572 Freddy's Trial | $600,000 |
| 5208 Freddy's Trial | $1,390,000 |
| 5524 Freddy's Trial (1/2 built) | $700,000 |
| 5264 Freddy's Trial (no basement) | $1,150,000 |
| Cliff Way, Alma, CO (vacant lot) | $35,000 |
| 767 Crossroads | $200,000 |
| 3056 Galapago | $575,000 |
| 5126 Freddy's Trial | $350,000 |
| 5622 Freddy's Trial | $350,000 |
| 5690 Freddy's Trial | $350,000 |
| 5625 Freddy's Trial | $350,000 |
| 5577 Freddy's Trial | $350,000 |
| 5531 Freddy's Trial | $350,000 |
| 5483 Freddy's Trial | $350,000 |
| 5437 Freddy's Trial | $350,000 |
| 771 Crossroads | $200,000 |
| Cash (12/31/2022) | $2,646 |
| 1% ownership in WilliamMrk | $0.00 |
| 2008 Gulf Stream | $30,000 |
| | |
| TOTAL: | $8,932,646 |

The Debtor has listed its assets with the market values above. Certain of the above listed properties are the subject of secured claims as discussed below.

Berkley Bank, pursuant to its Proof of Claim, asserts liens on the following properties in the following amounts:

5264 Freddy's Trial; $794,672.92.

5524 Freddy's Trial; $516,905.24

3056 Galapago; $461,486.10

Collegiate Peak Banks, pursuant to its Proof of Claim, asserts liens on the following properties in the following amounts:

5208 Freddy's Trial; $842,528.22

5424 Freddy's Trial; $819.338.12

767 Crossroads; $47,321.52

5126, 5572, 5622, 5690, 5625, 5577, 5531, 5483 Freddy's Trial; $624,528.94

Direct Lumber and Door of Colorado, pursuant to its Proof of Claim, asserts liens on the following properties in the following amounts:

5572 Freddy's Trial; $19,339.72

3

Foxworth Galbraith Lumber Company, pursuant to its Proof of Claim, asserts liens on the following properties in the following amounts:

5572 Freddy's Trial; $24,905.90

The Debtor disclosed on its Schedules the following liens on the following properties:

Christopher Rediger: 5437 Freddy's Trial; $96,514.86

David Hass: 5572 Freddy's Trial; $24,806.65

Ferguson Enterprises: 5424 Freddy's Trial; $10,463.46

Pinnacle Hardwood: 5264 Freddy's Trial; $24,400.54

Road Runner Heating and Air: 5208 Freddy's Trial; $3,500

Rocky Mountain Stonecrete: 5572 Freddy's Trial; $41,858.90

Tru Designs: 5424 Freddy's Trial; $6,400

Douglas County, pursuant to its Proof of Claim, asserts liens on the following properties in the following amounts:

5690 Freddy's Trial: $40.12

5524 Freddy's Trial: $3,296.32

5424 Freddy's Trial: $4,008.96

5208 Freddy's Trial: $5,455.82

5264 Freddy's Trial: $6,291.86

5216 Freddy's Trial: $8,829.28

5249 Freddy's Trial: $8,904.86


The Debtor is reserving the right to bring Avoidance Actions pursuant to 11 U.S.C. §§ 545 through 550 and state law based fraudulent conveyance actions. The Bankruptcy Code sets a 90-day look back period for creditors who are not insiders and one year for insiders.  The Debtor's Statement of Financial Affairs discloses the following transfers within the 90-day look back period:

Berkley Bank: $13,716.66

Collegiate Peaks: $26,667.53

Chase Credit Card: $25,788

Hi-Def Landscape and Design: $13,648.58

4

With respect to insiders, the Debtor's Statement of Financial Affairs discloses the transfer of the following transfers during the one year look back period:

Drew Myers: $380

Fred Myers: $4,000

Williammrk Homes: $3,252,664.30

Williammrk Masonary: $5,200

## DESCRIPTION OF LIABILITIES

### A.   Priority Claims

#### 1.   Priority Claims

Priority Claims are defined in the Plan as any pre-petition Claim entitled to a priority payment under § 507(a) of the Code, excluding any Administrative Claim or Tax Claims.  No claimants asserting a priority claim, excluding any Administrative Claim or Tax Claims, have filed a Proof of Claim, and the Debtor is currently unaware of any Priority Claims at this time.

#### 2.   Administrative Claims

Administrative Claims are those Claims for payment of an administrative expense of a kind specified in §503(b) or §1114(e)(2) of the Code and entitled to priority pursuant to §507(a)(2) of the Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estates and operating the businesses of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Cases; (b) Professional Fees; (c) any court approved fees and costs of the Sub-Chapter V Trustee; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Court under §503(b) of the Code.  The Administrative Claims, including the Professional Fees incurred during the case which remain unpaid, are as follows:

The Debtor retained Wadsworth Garber Warner Conrardy, P.C. ("WGWC") as its bankruptcy counsel.  WGWC has not yet filed a fee application in this case.  The Debtor provided WGWC with a retainer in the amount of $26,754.50 for post-petition services.  The Debtor estimates that there will be an Administrative Claim for unpaid legal fees owed to WGWC of at least $20,000.00 on the Effective Date of the Plan, which will be satisfied in part from the retainer. The legal fees could increase or decrease depending on the level of litigation over these issues and creditor claims.

The fees of the Sub-Chapter V Trustee are estimated to not exceed $5,000. The fees could increase or decrease depending on the level of assistance required by the Sub-Chapter V Trustee to reach a consensual Plan.

The Debtor retained Vedra Law ("VL") as its special litigation counsel.  VL has not yet filed a fee application in this case and did not receive a retainer.  The Debtor estimates that there will be an Administrative Claim for unpaid legal fees owed to VL of at least $30,000.00 on the Effective Date of the Plan, which will be satisfied in part from the retainer.

The Debtor has paid his other administrative expenses in the ordinary course of business during the course of the bankruptcy case, and, therefore, does not believe there will be any other material Administrative Claims asserted against the estate.

### 3.  Tax Claims

Tax Claims are any Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. §507(a)(8).    The Debtor scheduled the Internal Revenue Service ("IRS") as holding a Tax Claim in the amount of $19,0000.  The IRS did not file a Proof of Claim. No other Tax Claims have been asserted against the estate.

### 4.  Secured Claims

 **Berkley Bank.** Berkley Bank is the holder of a secured Claim pursuant to certain loan and security documents encumbering the following properties in the following amounts asserted in Berkley Banks's Proof of Claim:

5264 Freddy's Trial; $794,672.92.

5524 Freddy's Trial; $516,905.24

3056 Galapago; $461,486.10

**Collegiate Peak Banks.**  Collegiate Peak Banks is the holder of a secured Claim pursuant to certain loan and security documents encumbering the following properties in the following amounts asserted in Collegiate Peak Banks' Proof of Claim:

5208 Freddy's Trial; $842,528.22

5424 Freddy's Trial; $819.338.12

767 Crossroads; $47,321.52

College Peaks Banks also holds a secured Claim in the amount of $624,528.94 that encumbers the properties located 5126 Freddy's Trial, 5572 Freddy's Trial, 5622 Freddy's Trial,

6

5690 Freddy's Trial, 5625 Freddy's Trial, 5577 Freddy's Trial, 5531 Freddy's Trial, and 5483 Freddy's Trial based upon obligations created by a non-debtor affiliated entity.

**Direct Lumber and Door of Colorado.** Direct Lumber and Door of Colorado is the holder of a secured Claim pursuant to a mechanics lien claim encumbering the property located at 5572 Freddy's Trial in the amount asserted in Direct Lumber and Door of Colorado in the amount of $19,339.72.

**Foxworth Galbraith Lumber Company.** Foxworth Galbraith Lumber Company is the holder of a secured Claim pursuant to a mechanics lien claim encumbering the property located at 5572 Freddy's Trial in the amount asserted in Foxworth Galbraith Lumber Company's in the amount of $24,905.90.

**Douglas County.** Douglas County is the holder of a secured Claim pursuant to a tax lien encumbering the following properties in the following amounts asserted in Douglas County's Proof of Claim:

5690 Freddy's Trial: $40.12

5524 Freddy's Trial: $3,296.32

5424 Freddy's Trial: $4,008.96

5208 Freddy's Trial: $5,455.82

5264 Freddy's Trial: $6,291.86

5216 Freddy's Trial: $8,829.28

5249 Freddy's Trial: $8,904.86

**Christopher Rediger.** Christopher Rediger is not a creditor of the Debtor but holds a secured claim in the amount of $96,514.86 that encumbers the property located 5437 Freddy's Trial based upon obligations created by a non-debtor affiliated entity.

**David Hass.** David Hass is not a creditor of the Debtor but holds a secured claim in the amount of $24,806.65 that encumbers the property located 5572 Freddy's Trial based upon obligations created by a non-debtor affiliated entity.

**Ferguson Enterprises.** Ferguson Enterprises is not a creditor of the Debtor but holds a secured claim in the amount of $10,463.46 that encumbers the property located 5424 Freddy's Trial based upon obligations created by a non-debtor affiliated entity.

**Pinnacle Hardwood.**  Pinnacle Hardwood is not a creditor of the Debtor but holds a secured claim in the amount of $24,400.54 that encumbers the property located 5264 Freddy's Trial based upon obligations created by a non-debtor affiliated entity.

**Road Runner Heating and Air.**  Road Runner Heating and Air is not a creditor of the Debtor but holds a secured claim in the amount of $3,500 that encumbers the property located 5208 Freddy's Trial based upon obligations created by a non-debtor affiliated entity.

**Rocky Mountain Stonecrete.**  Rocky Mountain Stonecrete is not a creditor of the Debtor but holds a secured claim in the amount of $41,858.90 that encumbers the property located 5572 Freddy's Trial based upon obligations created by a non-debtor affiliated entity.

 **Tru Designs.**  Tru Designs is not a creditor of the Debtor but holds a secured claim in the amount of $6,400 that encumbers the property located 5424 Freddy's Trial based upon obligations created by a non-debtor affiliated entity.

**MS ManDEBT LLC.** MS ManDebt LLC ("MSM") has filed a Proof of Claim asserting a secured Claim in the amount of $5,246,353.08.  The Debtor disputes this Claim in its entirety. MSM has not attached any documents to its Proof of Claim that support it holds a consensual secured Claim against the Debtor's assets. Prior to the Petition Date, MSM initiated a state court litigation asserting an equitable lien over the Debtor's assets. No Court order or judgement was ever entered by the state court granting MSM a lien on the Debtor's assets.  MSM has initiated an adversary proceeding against the Debtor and other parties asserting similar claims as in the state court action.  The Debtor asserts the claims in the adversary proceeding are fully defensible and MSM cannot convert any unsecured Claim it may hold into a secured Claim post-Petition Date. The answer and counter-claims asserted by the Debtor in the adversary proceeding will include an objection to MSM's Claim.     The amount, extent and validity of MSM's Claim will be determined in the adversary proceeding.


**C.**      **Non-Priority Unsecured Creditors**

The Debtor scheduled two general unsecured creditors:

Chase Bank in the amount of $56,000

Derrick Myers in the amount of $520,000.

The bar date for filing Proofs of Claims against the Debtor was January 10, 2023.  Only one creditor filed a Proof of Claim asserting general unsecured Claim.  College Peaks Banks filed

an unsecured Claim in the amount of $624,528.94 based upon a guarantee of the Debtor on a loan to a related party but the Claim encumbers the Debtor's properties located 5126 Freddy's Trial, 5572 Freddy's Trial, 5622 Freddy's Trial, 5690 Freddy's Trial, 5625 Freddy's Trial, 5577 Freddy's Trial, 5531 Freddy's Trial, and 5483 Freddy's Trial.

**THE PLAN**

**ARTICLE I**

**DEFINITIONS**

1.01 – <u>Administrative Claim</u> shall mean a Claim for payment of an administrative expense of a kind specified in §§ 503(b) or 1114(c)(2) of the Code and entitled to priority pursuant to § 507(a)(2) of the Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) Professional Fees; (c) any court approved fees and costs of the Sub-Chapter V Trustee; (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Court under § 503(b) of the Code.

1.02 – <u>Allowed Claim</u> shall mean a Claim in respect of which a Proof of Claim has been filed with the Court within the applicable time period of limitation fixed by the Court in the case or scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, and as to which no timely objection to the allowance thereof has been filed pursuant to Rules 3001 and 3007 or as to which any such objection has been determined by a Final Order.

1.03 – <u>Allowed Secured Claim</u> shall mean an Allowed Claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under § 553 of the Code, to the extent of the value (determined in accordance with § 506(a) of the Code) of the interest of the holder of any such Allowed Claim and the Debtor's interest in such property or to the extent of the amount subject to such setoff as the case may be.

1.04 – <u>Avoidance Actions</u> shall mean the Debtor's estate's interest in any and all claims, rights and causes of action which have been or may be commenced by or on behalf of the Debtor to avoid and recover any transfers of property determined to be preferential, fraudulent or otherwise avoidable pursuant to §§ 544, 545, 547, 548, 549, 550 or 553 of the Code, or under any

9

other applicable law, or otherwise subject to equitable subordination under § 510 of the Code, regardless of whether or not such actions have been commenced prior to the Effective Date of the Plan.

1.05 – <u>Claim</u> shall mean any right to payment, or right to any equitable remedy for breach of performance if such breach gives rise to the right to payment, against the Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, natured, unmatured, disputed, undisputed, legal, secured or unsecured.

1.06 – <u>Class</u> shall mean any Class into which Allowed Claims are classified pursuant to Article II of the Plan.

1.07 – <u>Class 1-9 Claims and Interests</u> shall mean the Allowed Claims and Interests so classified in Article II of the Plan.

1.08 – <u>Code</u> shall mean the Bankruptcy Code, 11 U.S.C. § 101 et seq. and any amendments thereof.

1.09 – <u>Confirmation Date</u> shall mean the date upon which the Order of Confirmation is entered by the Court.

1.10 – <u>Court</u> shall mean the United States Bankruptcy Court for the District of Colorado in which the Debtor's Chapter 11 case is pending, pursuant to which this Plan is proposed, and any Court having competent jurisdiction to hear appeal or certiorari proceedings therefrom.

1.11 – <u>Debtor</u> shall mean the Debtor who is proposing this Chapter 11 Plan.

1.12 – <u>Disputed Claim</u> shall mean any Claim which is not an Allowed Claim, including, without limitation, any Claim designated as disputed, contingent or unliquidated in the Debtor's schedules filed in connection with the case, or any Claim against which an objection to the allowance thereof has been interposed, and as to which no Final Order has been entered.

1.13 – <u>Effective Date of the Plan</u> shall mean the Confirmation Date.

1.14 – <u>Final Order</u> shall mean an order or judgment of the Court which shall not have been reversed, stayed, modified or amended and as to which (a) the time to appeal from or to seek review, rehearing or certiorari shall have expired, and (b) no appeal or petition for review,

rehearing or certiorari is pending, or if appealed shall have been affirmed or the appeal dismissed by the highest court to which such order was appealed, or if review, rehearing or certiorari was sought, such review, rehearing or certiorari has been denied and no further hearing, appeal or petition for review, rehearing or certiorari can be taken or granted or as to which any right to appeal or to seek a review, rehearing or certiorari has been waived.

1.15 – <u>Interest</u> shall mean any member or shareholder interest or any other instrument evidencing any ownership interest in the Debtor and any option, warrant or right of any nature, contractual or otherwise, to acquire a member or other ownership interest in the Debtor.

1.16 – <u>Net Sale Proceeds</u> shall mean the gross sale proceeds on account of the sale of any asset of the Debtor, less payment of applicable taxes, closing costs and fees, brokers' commissions, legal fees, labor and employee and other costs of construction, maintenance and liquidation, and all secured claims encumbering such property.

1.17 - <u>Order of Confirmation</u> shall mean the order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

1.18 – <u>Petition Date</u> shall mean November 1, 2022, the date on which the Debtor filed his Voluntary Petition.

1.19 – <u>Plan</u> shall mean this Plan of Reorganization, including all exhibits and schedules attached hereto or referenced herein or therein.

1.20 – <u>Priority Claim</u> shall mean any pre-petition Claim entitled to a priority in payment under § 507(a) of the Code but shall not include any Administrative Claim or Tax Claim.

1.21 – <u>Pro Rata</u> shall mean the ratio of an Allowed Claim or Interest in a particular Class to the aggregate amount of all Allowed Claims or Interests in that Class.

1.22 – <u>Professional Fees</u> shall mean the Administrative Claims for compensation and reimbursement submitted pursuant to §§ 330, 331 and 503(b) of the Code by a professional.

1.23 – <u>Rules</u> shall mean the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules for the District of Colorado as adopted by the Court.

1.24 – <u>Sale Proceeds</u> shall mean the gross sale proceeds on account of the sale of any asset of the Debtor, less payment of applicable taxes, closing costs and fees, brokers' commissions, legal

11

fees, and other necessary costs of liquidation, and only those secured claims encumbering such property held by any entity that is not a creditor in this bankruptcy case or that was created post-Effective Date of the Plan.

1.25 - <u>Tax Claim</u> shall mean any unsecured Claim of a governmental unit for taxes entitled to priority pursuant to § 507(a)(8) of the Code.

1.26 – <u>Unclassified Priority Claims</u> shall mean Claims pursuant to § 507(a)(1) and 507(a)(2) of the Code which are Administrative Claims allowed under § 503(b) of the Code and any fees and charges against the estates under Chapter 23 of Title 28 of the United States Code and shall further mean Allowed unsecured Claims of governmental units to the extent provided for in § 507(a)(8) of the Code.

1.27 – <u>Other Definitions</u>.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan but that is defined in the Code or Rules shall have the meaning set forth therein.

## ARTICLE II
## DESIGNATION OF CLAIMS AND INTERESTS

The following is a designation of all Classes of Claims and Interests other than those Claims of a kind specified in Sections 507(a)(1), 507(a)(2), 507(a)(3) or 507(a)(8) of the Code.

<u>Class 1</u> – All Allowed unsecured Claims specified in Section 507(a)(4) and 507(a)(5) of the Code as having priority.

<u>Class 2(a), (b), (c)</u> – The Allowed Secured Claims of Berkely Bank or its successors and assigns.

<u>Class 3 (a), (b), (c)</u> – The Allowed Secured Claims of Collegiate Peak Banks or its successors and assigns.

<u>Class 4</u> - The Allowed Secured Claim of Direct Lumber and Door of Colorado.

<u>Class 5</u> - The Allowed Secured Claim of Foxworth Galbraith Lumber Company.

<u>Class 6(a), (b), (c), (d), (e), (f), (g)</u> – The Allowed Secured Claims of Douglas County

<u>Class 7</u> – The Secured Claim of MS ManDebt LLC or its successors and assigns.

<u>Class 8(a)</u> – The Allowed Claims held by unsecured creditors that do arise from a guarantee of a loan secured by property of the Debtor.

Class 8(b) - The Allowed Claims held by unsecured creditors that do not arise from a guarantee secured by property of the Debtor.

Class 9 – The Interests in the Debtor.

## ARTICLE III
## SPECIFICATION AND TREATMENT OF UNCLASSIFIED PRIORITY CLAIMS

As provided in Section 1123(a)(1) of the Code, the Claims against the Debtor covered in this Article II are not classified. The holders of such Allowed Claims are not entitled to vote on the Plan.

3.1 – The holders of Allowed Claims of the type specified in Section 507(a)(2) of the Code, Administrative Claims, shall receive cash equal to the Allowed amount of such Claim or a lesser amount or different treatment as may be acceptable and agreed to by particular holders of such Claims. Such Claims shall be paid in full from the Net Sale Proceeds. Section 507(a)(2) Administrative Claims that are Allowed by the Court after the Effective Date of the Plan shall be paid from the Net Sale Proceeds.

3.2 – The Allowed Claims of a type specified in Section 507(a)(8) of the Code, Tax Claims of governmental taxing authorities, shall be paid in full within five years of the Effective Date of the Plan.

## ARTICLE IV
## SPECIFICATION AND TREATMENT OF CLASS 1 PRIORITY CLAIMS

4.1 - Allowed Class 1 Priority Claims shall be paid in full from Net Sale Proceeds. The Class 1 Priority Claims for certain pre-petition wages and employee Claims are more particularly described in Sections 507(a)(4) and 507(a)(5) of the Code. The Debtor is currently unaware of any Allowed Class 1 Priority Claims.

## ARTICLE V
## SPECIFICATION AND TREATMENT OF SECURED CLAIMS

5.1 – **Class 2(a), Berkely Bank or its successors and assigns (5264 Freddy's Trial).**

The Class 2(a) Allowed Secured Claim shall be treated under this Plan as follows: The Class 2(a) Secured Claim shall be allowed in the full amount due and owing under the Note, Deed

of Trust and other loan and security document with respect to the property located at 5264 Freddy's Trial.

a.          Pursuant to 11 U.S.C. § 506, the Class 2(a) Claim is secured up to the value of the collateral and is unsecured as to the balance which balance shall be treated as a Class 8(b) unsecured claim.

b.          The Class 2(a) Allowed Secured Claim shall be satisfied from the Sale Proceeds from the sale of the 5264 Freddy's Trial property in the order of its priority and to the extent sale proceeds exist.

c.          The Class 2(a) Allowed Secured Claim shall accrue interest at the non-default rate under the applicable loan documents.

d.          The Class 2(a) claimant is enjoined and barred from taking any action to collect upon its Claim and shall not take action against the 5264 Freddy's Trial property for a period of twelve months from the Effective Date of the Plan.  If the Class 2(a) claimant does not receive the Sale Proceeds from the 5264 Freddy's Trial property within the twelve month period then it can take action only against the property to satisfy its Allowed Secured Claim.

5.2 – **Class 2(b), Berkely Bank or its successors and assigns (5524 Freddy's Trial).**

The Class 2(b) Allowed Secured Claim shall be treated under this Plan as follows:  The Class 2(b) Secured Claim shall be allowed in the full amount due and owing under the Note, Deed of Trust and other loan and security document with respect to the property located at 5524 Freddy's Trial.

a.          Pursuant to 11 U.S.C. § 506, the Class 2(b) Claim is secured up to the value of the collateral and is unsecured as to the balance which balance shall be treated as a Class 8(b) unsecured claim.

b.          The Class 2(b) Allowed Secured Claim shall be satisfied from the Sale Proceeds from the sale of the 5524 Freddy's Trial property in the order of its priority and to the extent sale proceeds exist.

c.          The Class 2(b) Allowed Secured Claim shall accrue interest at the non-default rate under the applicable loan documents.

d.      The Class 2(b) claimant is enjoined and barred from taking any action to collect upon its Claim and shall not take action against the 5524 Freddy's Trial property for a period of twelve months from the Effective Date of the Plan.  If the Class 2(b) claimant does not receive the Sale Proceeds from the 5524 Freddy's Trial property within the twelve month period then it can take action only against the property to satisfy its Allowed Secured Claim.

**5.3 – Class 2(c), Berkely Bank or its successors and assigns (3056 Galapago).**

The Class 2(c) Allowed Secured Claim shall be treated under this Plan as follows:  The Class 2(c) Secured Claim shall be allowed in the full amount due and owing under the Note, Deed of Trust and other loan and security document with respect to the property located at 3056 Galapago.

a. Pursuant to 11 U.S.C. § 506, the Class 2(c) Claim is secured up to the value of the collateral and is unsecured as to the balance which balance shall be treated as a Class 8(b) unsecured claim.

b. The Class 2(c) Allowed Secured Claim shall be satisfied from the Sale Proceeds from the sale of the 3056 Galapago property in the order of its priority and to the extent sale proceeds exist**.**

c. The Class 2(c) Allowed Secured Claim shall accrue interest at the non-default rate under the applicable loan documents.

d. The Class 2(c) claimant is enjoined and barred from taking any action to collect upon its Claim and shall not take action against the 3056 Galapago property for a period of twelve months from the Effective Date of the Plan.  If the Class 2(c) claimant does not receive the Sale Proceeds from the 3056 Galapago property within the twelve month period then it can take action only against the property to satisfy its Allowed Secured Claim.

**5.4 – Class 3(a), Collegiate Peak Banks or its successors and assigns (5208 Freddy's Trial).**

The Class 3(a) Allowed Secured Claim shall be treated under this Plan as follows:  The Class 3(a) Secured Claim shall be allowed in the full amount due and owing under the Note, Deed of Trust and other loan and security document with respect to the property located at 5208 Freddy's Trial.

a. Pursuant to 11 U.S.C. § 506, the Class 3(a) Claim is secured up to the value of the collateral and is unsecured as to the balance which balance shall be treated as a Class 8(b)

unsecured claim.

b. The Class 3(a) Allowed Secured Claim shall be satisfied from the Sale Proceeds from the sale of the 5208 Freddy's Trial property in the order of its priority and to the extent sale proceeds exist.

c. The Class 3(a) Allowed Secured Claim shall accrue interest at the non-default rate under the applicable loan documents.

d. The Class 3(a) claimant is enjoined and barred from taking any action to collect upon its Claim and shall not take action against the 5208 Freddy's Trial property for a period of twelve months from the Effective Date of the Plan.  If the Class 3(a) claimant does not receive the Sale Proceeds from the 5208 Freddy's Trial property within the twelve month period then it can take action only against the property to satisfy its Allowed Secured Claim.

**5.5 – Class 3(b), Collegiate Peak Banks or its successors and assigns (5424 Freddy's Trial).**

The Class 3(b) Allowed Secured Claim shall be treated under this Plan as follows:  The Class 3(b) Secured Claim shall be allowed in the full amount due and owing under the Note, Deed of Trust and other loan and security document with respect to the property located at 5424 Freddy's Trial.

a. Pursuant to 11 U.S.C. § 506, the Class 3(b) Claim is secured up to the value of the collateral and is unsecured as to the balance which balance shall be treated as a Class 8(b) unsecured claim.

b. The Class 3(b) Allowed Secured Claim shall be satisfied from the Sale Proceeds from the sale of the 5424 Freddy's Trial property in the order of its priority and to the extent sale proceeds exist.

c. The Class 3(b) Allowed Secured Claim shall accrue interest at the non-default rate under the applicable loan documents.

d. The Class 3(b) claimant is enjoined and barred from taking any action to collect upon its Claim and shall not take action against the 5424 Freddy's Trial property for a period of twelve months from the Effective Date of the Plan.  If the Class 3(b) claimant does not receive the Sale Proceeds from the 5424 Freddy's Trial property within the twelve month period then it can take action only against the property to satisfy its Allowed Secured Claim.

5.6 – **Class 3(c), Collegiate Peak Banks or its successors and assigns (767 Crossroads).**

The Class 3(c) Allowed Secured Claim shall be treated under this Plan as follows:  The Class 3(c) Secured Claim shall be allowed in the full amount due and owing under the Note, Deed of Trust and other loan and security document with respect to the property located at 767 Crossroads.

a. Pursuant to 11 U.S.C. § 506, the Class 3(c) Claim is secured up to the value of the collateral and is unsecured as to the balance which balance shall be treated as a Class 8(b) unsecured claim.

b. The Class 3(c) Allowed Secured Claim shall be satisfied from the Sale Proceeds from the sale of the 767 Crossroads property in the order of its priority and to the extent sale proceeds exist**.**

c**.**  The Class 3(c) Allowed Secured Claim shall accrue interest at the non-default rate under the applicable loan documents.

d. The Class 3(c) claimant is enjoined and barred from taking any action to collect upon its Claim and shall not take action against the 767 Crossroads property for a period of twelve months from the Effective Date of the Plan.  If the Class 3(c) claimant does not receive the Sale Proceeds from the 767 Crossroads property within the twelve month period then it can take action only against the property to satisfy its Allowed Secured Claim.

5.7 – **Class 4, Direct Lumber and Door of Colorado.**

The Class 4 Secured Claim shall be treated under this Plan as follows:  The Class 4 Secured Claim shall be allowed in the amount of $19,339.72 with respect to the property located at 5572 Freddy's Trial.

a. Pursuant to 11 U.S.C. § 506, the Class 4 Claim is secured up to the value of the collateral and is unsecured as to the balance which balance shall be treated as a Class 8(b) unsecured claim.

b. The Class 4 Allowed Secured Claim shall be satisfied from the Sale Proceeds from the sale of the 5572 Freddy's Trial property in the order of its priority and to the extent sale proceeds exist**.**

c.  The Class 4 Allowed Secured Claim shall accrue at an interest rate of 8%.

d. The Class 4 claimant is enjoined and barred from taking any action to collect upon its Claim and shall not take action against the 5572 Freddy's Trial property for a period of

twelve months from the Effective Date of the Plan.  If the Class 4 claimant does not receive the Sale Proceeds from the 5572 Freddy's Trial property within the twelve month period then it can take action only against the property to satisfy its Allowed Secured Claim.

**5.8 – Class 5, Foxworth Galbraith Lumber Company.**

The Class 5 Secured Claim shall be treated under this Plan as follows:  The Class 5 Secured Claim shall be allowed in the amount of $24,905.90 with respect to the property located at 5572 Freddy's Trial.

a. Pursuant to 11 U.S.C. § 506, the Class 5 Claim is secured up to the value of the collateral and is unsecured as to the balance which balance shall be treated as a Class 8(b) unsecured claim.

b. The Class 5 Allowed Secured Claim shall be satisfied from the Sale Proceeds from the sale of the 5572 Freddy's Trial property in the order of its priority and to the extent sale proceeds exist.

c.  The Class 5 Allowed Secured Claim shall accrue at an interest rate of 12%.

d. The Class 5 claimant is enjoined and barred from taking any action to collect upon its Claim and shall not take action against the 5572 Freddy's Trial property for a period of twelve months from the Effective Date of the Plan.  If the Class 5 claimant does not receive the Sale Proceeds from the 5572 Freddy's Trial property within the twelve month period that it can take action only against the property to satisfy its Allowed Secured Claim.

**5.9 – Class 6(a), Douglas County (5690 Freddy's Trial).**

The Class 6(a) Secured Claim shall be treated under this Plan as follows:  The Class 6(a) Secured Claim shall be allowed in the amount of $40.12 with respect to the property located at 5690 Freddy's Trial.

a. The Class 6(a) Allowed Secured Claim shall be satisfied from the Sale Proceeds from the sale of the 5690 Freddy's Trial property.

b.  The Class 6(a) Allowed Secured Claim shall accrue at an interest rate of 12%.

c. The Class 6(a) claimant is enjoined and barred from taking any action to collect upon its Claim and shall not take action against the 5690 Freddy's Trial property for a period of twelve months from the Effective Date of the Plan.  If the Class 6(a) claimant does not receive the Sale Proceeds from the 5690 Freddy's Trial property within the twelve month

period then it can take action only against the property to satisfy its Allowed Secured Claim.

**5.10 – Class 6(b), Douglas County (5524 Freddy's Trial).**

The Class 6(b) Secured Claim shall be treated under this Plan as follows: The Class 6(b) Secured Claim shall be allowed in the amount of $3,296.32 with respect to the property located at 5524 Freddy's Trial.

a. The Class 6(b) Allowed Secured Claim shall be satisfied from the Sale Proceeds from the sale of the 5524 Freddy's Trial property.

b. The Class 6(b) Allowed Secured Claim shall accrue at an interest rate of 12%.

c. The Class 6(b) claimant is enjoined and barred from taking any action to collect upon its Claim and shall not take action against the 5524 Freddy's Trial property for a period of twelve months from the Effective Date of the Plan. If the Class 6(b) claimant does not receive the Sale Proceeds from the 5524 Freddy's Trial property within the twelve month period then it can take action only against the property to satisfy its Allowed Secured Claim.

**5.11 – Class 6(c), Douglas County (5424 Freddy's Trial).**

The Class 6(c) Secured Claim shall be treated under this Plan as follows: The Class 6(c) Secured Claim shall be allowed in the amount of $4,008.96 with respect to the property located at 5424 Freddy's Trial.

a. The Class 6(c) Allowed Secured Claim shall be satisfied from the Sale Proceeds from the sale of the 5424 Freddy's Trial property.

b. The Class 6(c) Allowed Secured Claim shall accrue at an interest rate of 12%.

c. The Class 6(c) claimant is enjoined and barred from taking any action to collect upon its Claim and shall not take action against the 5424 Freddy's Trial property for a period of twelve months from the Effective Date of the Plan. If the Class 6(c) claimant does not receive the Sale Proceeds from the 5424 Freddy's Trial property within the twelve month period then it can take action only against the property to satisfy its Allowed Secured Claim.

**5.12 – Class 6(d), Douglas County (5208 Freddy's Trial).**

The Class 6(d) Secured Claim shall be treated under this Plan as follows: The Class 6(d)

Secured Claim shall be allowed in the amount of $5,455.82 with respect to the property located at 5208 Freddy's Trial.

    a. The Class 6(d) Allowed Secured Claim shall be satisfied from the Sale Proceeds from the sale of the 5208 Freddy's Trial property**.**

    b.  The Class 6(d) Allowed Secured Claim shall accrue at an interest rate of 12%.

    c. The Class 6(d) claimant is enjoined and barred from taking any action to collect upon its Claim and shall not take action against the 5208 Freddy's Trial property for a period of twelve months from the Effective Date of the Plan.  If the Class 6(d) claimant does not receive the Sale Proceeds from the 5208 Freddy's Trial property within the twelve month period then it can take action only against the property to satisfy its Allowed Secured Claim.

**5.13 – Class 6(e), Douglas County (5264 Freddy's Trial).**

    The Class 6(e) Secured Claim shall be treated under this Plan as follows:  The Class 6(e) Secured Claim shall be allowed in the amount of $6,291.86 with respect to the property located at 5264 Freddy's Trial.

    a. The Class 6(e) Allowed Secured Claim shall be satisfied from the Sale Proceeds from the sale of the 5264 Freddy's Trial property**.**

    b.  The Class 6(e) Allowed Secured Claim shall accrue at an interest rate of 12%.

    c. The Class 6(e) claimant is enjoined and barred from taking any action to collect upon its Claim and shall not take action against the 5264 Freddy's Trial property for a period of twelve months from the Effective Date of the Plan.  If the Class 6(e) claimant does not receive the Sale Proceeds from the 5264 Freddy's Trial property within the twelve month period then it can take action only against the property to satisfy its Allowed Secured Claim.

**5.14 – Class 6(f), Douglas County (5126 Freddy's Trial).**

    The Class 6(f) Secured Claim shall be treated under this Plan as follows:  The Class 6(f) Secured Claim shall be allowed in the amount of $8,829.28 with respect to the property located at 5126 Freddy's Trial.

    a. The Class 6(f) Allowed Secured Claim shall be satisfied from the Sale Proceeds from the sale of the 5126 Freddy's Trial property**.**

b.  The Class 6(f) Allowed Secured Claim shall accrue at an interest rate of 12%.

c. The Class 6(f) claimant is enjoined and barred from taking any action to collect upon its Claim and shall not take action against the 5126 Freddy's Trial property for a period of twelve months from the Effective Date of the Plan.  If the Class 6(f) claimant does not receive the Sale Proceeds from the 5126 Freddy's Trial property within the twelve month period then it can take action only against the property to satisfy its Allowed Secured Claim.

**5.15 – Class 6(g), Douglas County (5249 Freddy's Trial).**

The Class 6(g) Secured Claim shall be treated under this Plan as follows:  The Class 6(g) Secured Claim shall be allowed in the amount of $8,904.86 with respect to the property located at 5249 Freddy's Trial.

a. The Class 6(g) Allowed Secured Claim shall be satisfied from the Sale Proceeds from the sale of the 5249 Freddy's Trial property**.**

b.  The Class 6(g) Allowed Secured Claim shall accrue at an interest rate of 12%.

c. The Class 6(g) claimant is enjoined and barred from taking any action to collect upon its Claim and shall not take action against the 5249 Freddy's Trial property for a period of twelve months from the Effective Date of the Plan.  If the Class 6(g) claimant does not receive the Sale Proceeds from the 5249 Freddy's Trial property within the twelve month period then it can take action only against the property to satisfy its Allowed Secured Claim.

**5.16 – Class 7, MS ManDebt LLC or its successors and assigns**.  The Class 7 secured Claim is disputed in its entirety by the Debtor and shall be treated under this Plan as follows:

The extent, validity and amount of MSM's Claim, whether secured, unsecured or disallowed in its entirety is the subject of the Adversary Proceeding identified as *MS ManDebt LLC v. 303 Investments, LLC, et al.,* Adversary Proceeding No. 22-1303.

If the Court determines that MSM holds an Allowed Secured Claim, the Allowed Secured Claim shall be treated as follows:

a.   MSM shall first satisfy its Allowed Secured Claim against the real property assets of WilliamMRK, LLC.

b. To the extent that the MSM Allowed Secured Claim is not satisfied in full from the real property assets of WilliamMRK, LLC, then the outstanding balance of the MSM Allowed Secured Claim shall be satisfied as follows:

    i. Pursuant to 11 U.S.C. § 506, the Class 7 Claim is secured up to the value of the collateral is unsecured as to the balance which balance shall be treated as a Class 8(b) unsecured claim.

    ii. The remainder of Class 7 Allowed Secured Claim shall be satisfied from the Sale Proceeds from the sale of the Debtor's real property assets in the order of its priority and to the extent sale proceeds exist with respect to each property.

    iii. The Class 7 Allowed Secured Claim shall accrue interest at the non-default rate under the applicable loan documents.

    iv. The Class 7 claimant is enjoined and barred from taking any action to collect upon its Claim and shall not take action against the Debtor's assets for a period of twelve months from the Effective Date of the Plan.  If the Class 7 claimant's is not satisfied in full within the twelve month period that it can take action against the Debtor's property to satisfy its Allowed Secured Claim.

If the Court determines that MSM holds a general unsecured Claim against the Debtor such Claim shall be treated as a Class 8(b) unsecured claim.

## ARTICLE VI
## SPECIFICATION AND TREATMENT OF UNSECURED CREDITOR CLAIMS

6.1 – **Class 8(a), General Unsecured Claims arising from a guarantee of a loan secured by property of the Debtor**. - Class 8(a) consists of the general unsecured creditors of the Debtor who hold Allowed Claims arising from personal guaranties made by the Debtor which obligations are secured by property of the Debtor.  Class 8(a) shall be treated as set forth below:

a. Class 8(a) claimants shall receive a distribution from the Sale Proceeds from the property or properties in which the Class 8(a) claimant has a lien.

b. To the extent there is insufficient Sale Proceeds to satisfy the Class 8(a) claimant in full, the balance shall be treated as a Class 8(b) Claim.

6.2 – **Class 8(b), General Unsecured Allowed Claim, do not arise from a guarantee secured by property of the Debtor.** - Class 8(b) consists of the general unsecured creditors of the Debtor who hold Allowed Claims not arising from personal guaranties of the Debtor that is secured by property of the Debtor.  Class 8(b) Allowed Claims shall share on a Pro Rata basis in the Net Sale Proceeds after the satisfaction of Allowed Administrative Claims.

**ARTICLE VII**

**SPECIFICATION AND TREATMENT OF CLASS 9 INTERESTS**

7.1 – Class 9 includes the Interests of the Debtor, which Interests are unimpaired by the Plan.  Upon confirmation of the Plan, the interest holders in the Debtor shall continue to maintain their interests in the Debtor.

**ARTICLE VIII**

**MEANS FOR THE PLAN'S EXECUTION**

8.1 – Operation of Business.  The Debtor shall be empowered to take such action as may be necessary to perform its obligations under this Plan.

8.2 – Effectuating the Plan.  On the Effective Date of the Plan, Derrick Myers shall serve as the agent pursuant to 11 U.S.C. §1142(b) for the purpose of carrying out the terms of the Plan, and taking all actions deemed necessary or convenient to consummating the terms of the Plans, including, but not limited to, executing documents.

8.3 – Sale Proceeds/Net Sale Proceeds –Upon the Effective Date of the Plan, the Debtor shall take all steps necessary to generate Sale Proceeds/Net Sale Proceeds and commence completion of construction and sale of the Debtors' real property assets.  The Debtor may retain such professionals, contractors, subcontractors and employees as it deems necessary to generate the Sale Proceeds/Net Sale Proceeds, including real estate professionals and attorneys.  The Debtor, as a part of generating the Sale Proceeds/Net Sale Proceeds, can borrow monies and encumber such assets as the Debtor determines is necessary to develop and/or improve the properties for sale. The Debtor may not encumber the assets of the Debtor for any other purpose except the development and improvement of the properties.

8.4 – Disputed Claim Procedure.  Distributions to any Class of creditors will only be made on account of Allowed Claims.  In the event that distributions are made at a time that a Claim

objection is pending before the Court or a judgment has entered to establish a Claim and the judgment is not subject to a Final Order, the portion of the distribution that would be paid to the disputed claimant will be held by the Debtor in an interest-bearing bank account until the Claim is allowed or disallowed.  If allowed, the Claim will be paid its appropriate share of the withheld payment.  If disallowed, the withheld distribution will be paid on a Pro Rata basis to the remaining impaired claimants of the Debtor who hold Allowed Claims, or if all holders of Allowed Claims have been paid in full, paid to the Debtor.

8.5 – Claims and Litigation Bar Date and Standing.  All Claim objections and Avoidance Actions in the case must be filed by the later of (a) limitation period set forth in § 546(a) of the Code, or (b) ninety (90) days following the Effective Date of the Plan.  The Debtor shall have standing to commence, prosecute, and settle Claim objections and Avoidance Actions without need for Court approval. The Debtor has retained Wadsworth Garber Warner Conrardy, P.C. to litigate any Claim objections and Avoidance Actions on an hourly basis and/or a contingency fee basis, as he determines is reasonable and in the best interest of the estate.

8.6 – Administrative Expense Bar Date.  All applications for allowance and payment of Administrative Claims, including Professional Fees, must be filed within ninety (90) days following the Effective Date of the Plan.

8.7 – Monthly Installments.  Whenever the Plan provides for payment in monthly installments or a payment due in a certain month, the payment shall be due on the last day of the calendar month in which the payment is due, unless otherwise specified in the Plan.  The Debtor shall then have a five (5) day grace period within which the monthly payment must be received by the payee before the Debtor shall be in default unless a longer period is specified elsewhere in the Plan.

8.8 – Final Decree.  The Debtor will request entry of a final decree closing the case on or before the later of the date all Claim objections and any pending litigation is concluded or one hundred eighty (180) days after the Effective Date of the Plan or as otherwise in compliance with orders of the Court and the Bankruptcy Code and Rules, or such other time as is appropriate under the proceedings of the case.

8.9 – Exemption from Transfer Taxes.  Pursuant to Section 1146(c) of the Code, the issuance, transfer, or exchange of notes or equity securities under the Plan by the Debtor, the

24

creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan or the Agreements shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

8.10 – Contractual Relationship.  The Plan, upon confirmation, constitutes a new contractual relationship by and between the Debtor and its creditors.  In the event of a default by the Debtor under the Plan, creditors shall be entitled to enforce all rights and remedies against the Debtor for breach of contract, the Plan.  Any secured creditor claiming a breach of the Plan by the Debtor will be able to enforce all of its rights and remedies under its security documents, including foreclosure of its deed of trust, security agreement, lien, or mortgage pursuant to the terms of such document.  Any creditor claiming a breach by the Debtor must provide written notice to the Debtor of the claimed default, the notice must provide the Debtor a fourteen (14) day period within which to cure the claimed default, unless a longer period is specified elsewhere in the Plan.  Upon the Debtor's failure to cure the default within such fourteen (14) day period, the creditor may proceed to exercise its rights and remedies.  To be clear, contracts are only being modified as set forth in this Plan.

8.11 – Injunction.  The injunctions contained in Bankruptcy Code § 362(a) shall continue against any creditor or other party holding a Claim against the Debtor or estate assets during the term of the Plan except as provided herein.  This injunction shall not apply if the Court determines the Debtor defaulted under the Plan.

## ARTICLE IX
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1 – On the Effective Date of the Plan, the Debtor does hereby assume those executory contracts and unexpired leases not expressly rejected or which have not been assumed by order of the Court prior to the Confirmation Date.  On the Confirmation Date, the Debtor shall be the holder of all right, title and interest to the assumed leases and contracts and such assumed leases and contracts shall be in full effect and binding upon the Debtor and the other parties thereto. Confirmation of the Plan shall constitute a determination that the payments to be made to said creditors pursuant to the Plan satisfy all conditions precedent to assumption and assignment set forth in § 365(b) and (f) of the Code.

9.2 – On the Effective Date of the Plan, the Debtor does hereby reject all executory contracts and unexpired leases to which it is a party for which a motion is pending or for which have been rejected by order of the Court prior to the Confirmation Date and as provided herein. Executory contracts and unexpired leases will be rejected pursuant to the provisions of § 365 of the Code.

9.3 – Confirmation of the Plan constitutes approval by the Court of the rejection of the executory contracts and unexpired leases described herein in accordance with the provisions of § 365 of the Code and the Rules.

9.4 – Claims Arising from Rejection.  All Proofs of Claim with respect to Claims arising from the rejection of any executory contract or unexpired lease shall be filed with the Court within twenty (20) days after the earlier of: (i) the date of the Court's order approving the rejection of such executory contract or unexpired lease; (ii) rejection by operation of law under the Code; or (iii) the Confirmation Date.  Any Claims not filed within such time shall be forever barred against the Debtor, his estates and property, and any such Claims shall be disallowed in full.  Claims arising from such rejection, to the extent allowed, shall be treated as Class 8 unsecured Claims.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

10.1 – Revestment.  On the Effective Date of the Plan, all property of the estate shall revest in the Debtor free and clear of all liens except those specifically set forth in the Plan or as otherwise provided in the Plan.

10.2 – Retention of Jurisdiction.  Notwithstanding confirmation of the Plan, the Court shall retain jurisdiction for the following purposes:

(a)    Determination of the allowability of Claims upon objection to such Claims by the Debtor or by any other party in interest;

(b)    Determination of the request for payment of Claims entitled to priority under § 507(a)(2) of the Code, including compensation of the parties entitled thereto;

(c)    Resolution of any disputes regarding interpretation of the Plan;

(d)    Implementation of the provisions of the Plan and entry of orders in aid of consummation of the Plan, including without limitation, appropriate orders to

26

protect the revested Debtor from action by creditors;

(e)     Modification of the Plan pursuant to § 1127 of the Code;

(f)     Adjudication of any causes of action, including Avoidance Actions, brought by the Debtor, by the representative of the estate or by a Trustee appointed pursuant to the Code;

(g)     Adjudication of any cause of action brought by the Debtor, Creditors Committee, by a representative of the estate, or by a Trustee appointed pursuant to the Code, or the revested Debtor exercising rights and powers as provided in §§ 542-549 of the Code.  This section shall not be construed to limit any other power or right which the Debtor may possess under any section of the Code; and

(h)     Entry of a final decree.

10.3 – Satisfaction of Claims.  The Debtor shall receive a discharge pursuant to Sections 1192 and 1141(d) of the Code.  Confirmation of the Plan and the occurrence of the Effective Date of the Plan shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan as set forth in the Plan.  Any obligation or note, previously in default, so modified, shall be cured as modified as of the Effective Date of the Plan.  This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan.   If the Plan is confirmed under Code § 1191(b) then the Debtor shall not receive a discharged until it satisfies its obligations under the Plan during the three year term of the Plan.

10.4 – Headings.  The headings used in the Plan are for convenience of reference only and shall not limit or in any manner affect the meaning or interpretation of the Plan.

10.5 – Notices.  All notices, requests, demands, or other communications required or permitted in this Plan must be given in writing to the party(ies) to be notified.  All communications will be deemed delivered when received at the following addresses:

    a.     To the Debtor:
           303 Investments, Inc.
           c/o Derrick Myers
           10940 S. Parker Road #616
           Parker, Colorado 80134

With a copy to:
Aaron A. Garber
Wadsworth Garber Warner Conrardy, P.C.
2580 West Main Street, Suite 200
Littleton, CO 80120
Email: agarber@wgwc-law.com

b.   To an allowed claimant, at the address set forth in the allowed Proof of Claim, if filed, or at the address set forth for the claimant in the Debtor's Schedules filed with the Court.

10.5 – Successors and Assigns.  The Plan will be binding upon the Debtor, any creditor affected by the Plan and its heirs, successors, assigns and legal representatives.

10.6 – Unclaimed Payments.  If a person or entity entitled to receive a payment or distribution pursuant to this Plan fails to negotiate a check, accept a distribution, or leave a forwarding address in the event notice cannot be provided as set forth in paragraph 10.5 of the Plan, within six months of the Effective Date of the Plan, the person or entity is deemed to have released and abandoned any right to payment or distribution under the Plan.

## ARTICLE XI
## CONFIRMATION REQUEST

11.1 – The Debtor, as the proponent of the Plan, requests confirmation of the Plan pursuant to § 1191 of the Code.

### PLAN FEASIBILITY

The Debtor believes that the Plan, as proposed, is feasible.  Attached hereto as Exhibit A is the Debtor's projections for the cost of development and sale of its real estate holdings.  The Debtor has been engaged in the business for over fifteen years and has the expertise and experience to fully develop and market its real estate holding to maximize the distribution to creditors.  Based upon the projections the Debtor will develop and liquidate its assets within a three-year period generating $5,246,353 after the satisfaction of secured debt, accounting for the cost of construction and the cost of liquidation.  As detailed in the liquidation analysis below, the Plan provides a means for paying all creditor Claims in full.

28

## TAX CONSEQUENCE

The Debtor is not providing tax advice to creditors or Interest holders.  Each party affected by the Plan should consult its own tax advisor for information as to the tax consequences of Plan confirmation.   Generally, unsecured creditors should have no tax impact as a result of Plan confirmation.  The recovery of each creditor is payment on account of a debt and generally not taxable, unless the creditor wrote off the debt against income in a prior year, in which case income may have to be recognized.  Interest holders may have very complicated tax effects as a result of Plan confirmation.

## LIQUIDATION ANALYSIS UNDER CHAPTER 7

The principal alternative to the Debtor's reorganization under Chapter 11 is a conversion of the case to Chapter 7 of the Code.  Chapter 7 requires the liquidation of the Debtor's assets by a Trustee who is appointed by the United States Trustee's office.  In a Chapter 7 case, the Chapter 7 Trustee would take over control of the assets.  Secured creditors would seek relief from the automatic stay to foreclose upon their collateral, the Debtor's asset.  The assets would be liquidated and the proceeds distributed to creditors in the order of their priorities. Under a Chapter 7, it is likely that a Chapter 7 trustee would not engage in litigation with MSM, that its alleged secured claim would be allowed in full.  As detailed above, the secured debt encumbering the Debtor's assets, not including MSM totals, $4,413,786. MSM asserts in its Proof of Claim a secured claim encumbering the Debtor's assets of $5,246,353.  As set forth in the asset section of this Plan above, the Debtor's assets are projected to have a value of $8,932,646. Since the total secured debt, if MSM is to hold an Allowed Secured Claims, exceeds the value of the Debtor's assets, relief from the automatic stay would likely be granted to secured creditors on all of the Debtor's assets, providing no distribution to unsecured creditors.

However, it is possible that the Chapter 7 Trustee forces MSM, under a marshaling concept, to satisfy all or a portion of its claim from WilliamMRK's assets.  It is also possible that the Chapter 7 trustee litigates with MSM over the extent and validity of MSM's claim.  Assuming MSM does not hold a claim against the Debtot's estate either because it is satisfied from the WilliamMRK asserts or because the Court disallows MSM's claim, then a Chapter 7 trustee would not develop the assets but rather would sell the Debtor's assets where-is/as-is, in other words in their current condition, assuming all assets are not lost in a foreclosure. As set forth in the asset section above

29

the Debtor's assets have a projected value of $8,932,646. As a part of the liquidation of the assets, the Chapter 7 trustee would have to pay the cost of liquidation of the assets, estimated to be 7%, or $625,285. Then the Chapter 7 trustee would have to pay the cost of administration of the Chapter 7 bankruptcy estate. It is estimated, including the cost of litigation with MSM, the cost to administer the Chapter 7 bankruptcy estate would be $150,000. Then the Chapter 7 trustee would receive his compensation in accordance with Code § 326. Assuming an estate of $8,932,646, the Chapter 7 trustee would receive compensation in the amount of $291,229. Thus, after considering the cost of liquidation and the satisfaction of Chapter 7 administrative expenses, there would be $7,886,132 in the bankruptcy estate. As a part of the liquidation, the secured claims encumbering the properties totaling approximately $4,413,786 would need to be satisfied. After the satisfaction of secured claims, there would be approximately $3,472,346 available to distribute to creditors. First, administrative claimants with Allowed Claims would be satisfied and then the claims of general unsecured creditors. Thus, under a Chapter 7, if the Chapter 7 trustee litigates and prevails on the litigation with MSM, there will be sufficient assets to pay all creditors in full.

Under the Plan, as shown on the Projections attached hereto as Exhibit A, after 303 develops and liquidates the Debtor's real estate assets, the estate will have $5,823,250 to distribute to unsecured creditors. The Projections, in the cost column, takes into consider the cost of developing the real estate, the cost of liquidation and the satisfaction of all secured claims, except MSM. MSM has filed a Proof of Claim in the amount of $5,246,353. 303 has retained in this bankruptcy case special litigation counsel, who will litigate the extent and validity of MSM's Claim. Even of the Court allows the Claim of MSM in full as a secured Claim, the Plan requires MSM to first satisfy its Claim from the asserts of WilliamMRK, LLC. WilliamMRK, LLC's assets are estimated to be valued at not less than $2,000,000. Under the Plan, assuming MSM holds an allowed secured claim, and receives $2,000,000 from the William MRK assets, MSM will hold a claim against the bankruptcy estate in the amount of $3,246,353. After the satisfaction of the MSM claim, $2,576,897 will be available to distribute to general unsecured creditors. Total unsecured claims, including priority and general unsecured claims, is projected to total $650,000. Thus, under the Plan, even if MSM's claim is allowed in full, it is projected that all unsecured creditors will be paid in full under the Plan. The Plan is the only mechanism that provides a means

of paying unsecured creditors will be paid in full even if MSM holds an Allowed Secured Claim.

DATED: January 30, 2023

303 INVESTMENTS, INC.

By:*/s/ Derrick Myers*
Derrick Myers

WADSWORTH GARBER WARNER CONRARDY, PC

By:    */s/ Aaron Garber*
Aaron A. Garber #36099
Wadsworth Garber Warner Conrardy, P.C.
2580 West Main Street, Suite 200
Littleton, CO 80120
Telephone: (303) 296-1999
Telecopy: (303) 296-7600
Email: agarber@wgwc-law.com

ATTORNEYS FOR DEBTOR AND DEBTOR-IN-POSSESSION

EXHIBIT A

| LOT | Address | BANK | MODEL | LIST PRICE | Cost | Year 1 | Year 2 | Year 3 |
|---|---|---|---|---|---|---|---|---|
| 1 | 5126 | | X-home | $ 1,230,000.00 | $ 850,000.00 | | | $ 380,000.00 |
| 2 | 5208 | CPB | Jackson | $ 1,390,000.00 | $ 850,000.00 | $ 540,000.00 | | |
| 3 | 5264 | BB | Valmont | $ 1,250,000.00 | $ 825,000.00 | $ 425,000.00 | | |
| 6 | 5424 | CPB | Jackson | $ 1,250,000.00 | $ 850,000.00 | $ 400,000.00 | | |
| 8 | 5524 | BB | Ridgeway | $ 1,240,000.00 | $ 925,000.00 | $ 315,000.00 | | |
| 9 | 5572 | | Jackson | $ 1,330,000.00 | $ 800,000.00 | | $ 530,000.00 | |
| 10 | 5622 | | X-home | $ 1,230,000.00 | $ 850,000.00 | | $ 380,000.00 | |
| 11 | 5690 | | X-home | $ 1,230,000.00 | $ 850,000.00 | | $ 380,000.00 | |
| 22 | 5625 | | X-home | $ 1,230,000.00 | $ 850,000.00 | | $ 380,000.00 | |
| 23 | 5577 | | X-home | $ 1,230,000.00 | $ 850,000.00 | | | $ 380,000.00 |
| 24 | 5531 | X | X-home | $ 1,230,000.00 | $ 750,000.00 | | | $ 480,000.00 |
| 25 | 5483 | X | X-home | $ 1,230,000.00 | $ 750,000.00 | | | $ 480,000.00 |
| 26 | 5437 | CR | X-home | $ 1,230,000.00 | $ 850,000.00 | | | $ 380,000.00 |
| | | | | | | $ 1,680,000.00 | $ 1,670,000.00 | $ 2,100,000.00 |
| | | | | | | | | |
| **Cliffs Way** | | | | $ 35,000.00 | $ 1,750.00 | $ 33,250.00 | | |
| **767 Crossroads Circle** | | | | $ 200,000.00 | $ 50,000.00 | | $ 150,000.00 | |
| **771 Crossroads Circle** | | | | $ 200,000.00 | $ 10,000.00 | | $ 190,000.00 | |
| **Galapego** | | BB | | $ 575,000.00 | $ 460,000.00 | $ 115,000.00 | | |
| | | | | | Year totals | $ 1,713,250.00 | $ 2,010,000.00 | $ 2,100,000.00 |